IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
HARRISON DIVISION

MELCOME E. WEBBER                                                                                    PLAINTIFF

        v.                          Civil No. 09-3033

MICHAEL J. ASTRUE, Commissioner of
Social Security Administration                                                                    DEFENDANT

## MEMORANDUM OPINION

I.     **Factual and Procedural Background**

Plaintiff, Melcome E. Webber, appeals from the decision of the Commissioner of the Social Security Administration ("Commissioner") denying his applications for disability insurance benefits ("DIB") and supplemental security income benefits ("SSI"), pursuant to §§ 216(i) and 223 of Title II of the Social Security Act, 42 U.S.C. §§ 416(i) and 423(d), and § 1602 of Title XVI, 42 U.S.C. § 1381a, respectively (collectively, "the Act").

At the time of the alleged onset date, Plaintiff was twenty three years old with a high school education. (Tr. 12). He has past relevant work as a construction laborer, which he performed at a medium exertional level. (Tr. 50). Plaintiff filed his DIB and SSI applications on December 13, 2006, alleging a disability onset date of September 30, 2002,[1] due to organic brain syndrome, Methemoglobinemia,[2] blindness in his left eye, learning and memory problems, and left knee pain.

---

[1] Due to a prior filing with an initial denial date of July 26, 2004, which was not appealed, July 27, 2004, is the earliest date Plaintiff can be determined to be disabled. (Tr. 44).

[2] Methemoglobinemia is the presence of excessive methemoglobin in the blood. It may be chemical- or drug-induced or hereditary. Congenital or hereditary methemoglobinemia is caused by a deficiency of cytochrome-b5 reductase, an autosomal recessive condition that may be either confined to the erythrocytes and relatively symptom-free or generalized to the leukocytes and sometimes the brain, muscle, and fibroblasts, in which case the individual may be mentally retarded. Abnormalities of hemoglobin M are autosomal dominant conditions that cause

(Tr. 37-38, 52, 80-90, 114-21).

Plaintiff's applications were denied at the initial and reconsideration levels. (Tr. 52-58, 60-63). At Plaintiff's request, an administrative hearing was held on March 27, 2008. (Tr. 10-36). Plaintiff was present at this hearing and represented by counsel. The Administrative Law Judge ("ALJ") rendered an unfavorable decision on August 20, 2008, finding that Plaintiff was not disabled within the meaning of the Act because he was capable of performing one or more occupations existing in significant numbers in the national economy. (Tr. 41-51). Subsequently, the Appeals Council denied Plaintiff's Request for Review on February 26, 2009, thus making the ALJ's decision the final decision of the Commissioner. (Tr. 1-3). Plaintiff now seeks judicial review of that decision.

## II.   Medical History

Plaintiff completed an eighteen month vocational rehabilitation program at Hot Springs Rehabilitation Center, during which time he received physical and mental health treatment. On March 25, 2002, Plaintiff was given a specialized diet to help control the symptoms of methemoglobinemia, including dizziness, shortness of breath, and headache. (Tr. 320). He was also prescribed vitamin C to reduce cyanosis (bluish tint) and given an exercise routine to build endurance. (Tr. 204–05, 273-81). On December 27, 2002, Plaintiff presented to the emergency room at St. Joseph's Mercy Health Center with complaints of dizziness, headache, and shortness of breath. (Tr. 206-07). He was diagnosed with acute hypoxemia, methemoglobinemia with exacerbation, and hypokalemia (low potassium). *Id.* Plaintiff was given oxygen and potassium and

---

cyanosis in infancy but usually few other symptoms. DORLAND'S ILLUSTRATED MEDICAL DICTIONARY 1098-99 (28th ed. 2000).

later prescribed vitamin C. (Tr. 202-207). Plaintiff presented to St. Joseph's again on January 22, 2003, with complaints of chest pain and lightheadedness. (Tr. 202). He was diagnosed with gastroesophageal reflux disease ("GERD") and prescribed Protonix and Mylanta. (Tr. 203). His methemoglobinemia level was at 7.8%, which was above normal but much improved from 24% on December 27, 2002. (Tr. 202-03). Plaintiff's remaining medical records reveal occasional "flare-ups" of his methemoglobinemia, which were consistently treated with vitamin C. (Tr. 202-07, 269, 320, 360-72, 390-99, 407). After reviewing Plaintiff's medical records, Dr. Ronald Crow, a DDS evaluator, determined that Plaintiff's methemoglobinemia was clinically mild. (Tr. 219).

Plaintiff's left knee impairment stems from an incident where he reportedly stepped into a hole, injuring his left leg. (Tr. 288). A physical exam dated September 30, 2003, revealed full range of motion in Plaintiff's hip and normal flexion and extension in his left knee. (Tr. 287). X-rays of Plaintiff's left knee, taken on November 13, 2003, revealed no fractures or significant arthritis. (Tr. 296, 330-31). A follow-up examination showed full range of motion in both knees, with no instability or effusion, but slight weakness in his quadriceps. (Tr. 298). Plaintiff was given ibuprofen and an exercise program to strengthen his legs. (Tr. 298). On December 12, 2003, he reported no leg pain. (Tr. 299). X-rays taken during a consultative evaluation dated February 28, 2007, revealed no evidence of fracture, deformity, or arthritis. (Tr. 217). Dr. Abraham noted that Plaintiff was able to perform all requested tasks during the physical exam. (Tr. 218). Plaintiff continues to take over the counter medication for knee pain, but has not received any further treatment. (Tr. 21-22, 162-63).

Plaintiff's remaining medical records indicate that he was seen on several occasions for chest pain, which was attributed to GERD, once for lacerations sustained during a physical altercation,

once for appendicitis (resulting in appendectomy), and once for a shoulder sprain. (Tr. 198-99, 202-03, 307, 321, 370, 418-20). Plaintiff has not alleged these impairments in either his DIB or SSI applications or at the administrative hearing. As such, they warrant no further discussion.

Mentally, Plaintiff claims he suffers from learning disabilities, memory impairment, depression, and organic brain syndrome. (Tr. 26-29, 114-21). Dennis Boyer, a psychological examiner, evaluated Plaintiff in April 1997 and August 2001. On the Wechsler Abbreviated Scale of Intelligence, Plaintiff demonstrated a verbal IQ of 76 (borderline), a performance IQ of 119 (high average), and a full-scale IQ of 95 (average). (Tr. 187). Boyer assessed Plaintiff with a reading and mathematics disorder in Axis I. (Tr. 189, 264). He found that Plaintiff demonstrated average to above average intellectual ability, but displayed academic deficits and significant variability among the skill areas examined. (Tr. 189). He estimated Plaintiff's Global Assessment of Functioning ("GAF") at 65.[3] (Tr. 189, 264). It was his opinion that Plaintiff would need extensive vocational and personal guidance in order to function independently by means of competitive employment. (Tr. 189).[4]

On March 25, 2002, Plaintiff was prescribed Desyrel for depression stemming from his brother's recent death. (Tr. 320). On May 8, 2002, Plaintiff was diagnosed with depressive disorder NOS and bereavement. (Tr. 266-67). He was then prescribed Zoloft, which he voluntarily discontinued due to nausea. (Tr. 268). On June 19, 2002, Plaintiff stated that his symptoms of

---

[3] A claimant with a GAF score of 61-70 experiences "some mild symptoms (e.g., depressed mood and mild insomnia) or some difficulty in social, occupational, or school functioning," but is generally functioning pretty well. DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS, 34 (4th ed., 2000).

[4] Plaintiff completed his vocational training program and was deemed ready for employment placement on April 29, 2004. (Tr. 359).

depression were "getting better." (Tr. 268). He received no further treatment for depression.

On April 4, 2007, Plaintiff saw Dr. W. Charles Nichols, a psychologist. Plaintiff reported a history of special education, trouble with authority figures, difficulty understanding instructions, and difficulty with his short term memory. (Tr. 222). He reported no prior head trauma. *Id.* Plaintiff's longest reported employment lasted eighteen months and ended when he moved to Arkansas. (Tr. 224). He was not taking any prescription medications. (Tr. 223). He reportedly attempted suicide on one occasion, but denied any recent suicidal thoughts or feelings of depression. (Tr. 224). Thought processes were goal-directed and content was intact. (Tr. 224-25). Plaintiff was alert and fully oriented. *Id.* Dr. Nichols noted that Plaintiff had little difficulty recalling dates and recent conversations, but demonstrated latency and switching the order of numbers in sequences. (Tr. 226).

Based on these findings, Dr. Nichols diagnosed Plaintiff with a reading and mathematics disorder (per history) in Axis I and noted some schizotypal and dependent personality traits in Axis II. *Id.* He determined that Plaintiff's impairments had a minimal impact on his ability to execute activities of daily living. *Id.* Dr. Nichols perceived no severe distractibility issues and noted consistent attention to tasks and concentration, with no signs of derailment, loss of concentration, or forgetfulness. *Id.* Plaintiff performed at an adequate pace with no signs of psychomotor slowing, and did not require any breaks. (Tr. 226).

In a Psychiatric Review Technique dated April 13, 2007, Dan Donahue reviewed Plaintiff's records and determined that he did not meet Listing 12.02 (organic mental disorders), as he had only mild restriction of activities of daily living, moderate difficulties in maintaining social functioning, moderate difficulties in maintaining concentration, persistence, or pace, and insufficient evidence

to show episodes of decompensation, each of extended duration. (Tr. 242). Donahue noted that Plaintiff's verbal skills were much less developed than his nonverbal skills, but nevertheless found that he could perform work at the unskilled level. *Id.* In an accompanying Mental Residual Functional Capacity ("RFC") Assessment, Donahue found only moderate limitations in areas of understanding and memory, concentration and persistence, social interaction, and adaptation. (Tr. 246).

At his attorney's request, Plaintiff was evaluated by Dr. Vann Smith, a neuropsychologist, on May 22, 2007. Despite earlier statements to the contrary, Plaintiff revealed that he had sustained multiple closed head injuries as a child. (Tr. 250). Plaintiff was oriented in all spheres. (Tr. 250). His memory was impaired, but judgment and insight were intact. *Id.* Narratives were marginally fluent but logical and informative. *Id.* Plaintiff denied suicidal ideation and reported no delusions or hallucinations. *Id.* Thought processes were abstract to functional in quality. *Id.*

On the Wechsler Adult Intelligence Scale (Revised), Plaintiff received a verbal IQ of 99, a performance IQ of 93, and a full-scale IQ of 96, which is within the average range. (Tr. 250). Nevertheless, Dr. Smith found that Plaintiff suffered from organic brain/cognitive dysfunction of moderate severity and gave Plaintiff an estimated GAF of 30-35.[5] *Id.* He opined that Plaintiff's symptoms interfere significantly with his capacity to carry out routine daily activities in a consistent manner and, in his opinion, Plaintiff is totally disabled. *Id.* Dr. Smith completed an accompanying Mental RFC assessment, in which he determined that Plaintiff was either unable to meet competitive

---

[5] A claimant with a GAF score of 21-30 is considerably influenced by delusions or hallucinations, has serious impairment in communication or judgment, or has an inability to function in almost all areas. DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS, *supra* note 3, at 34. A claimant with a GAF score of 31-40 demonstrates some impairment in reality testing or communication or major impairment in several areas, such as work or school, family relations, judgment, thinking, or mood. *Id.*

standards or seriously limited in all areas of unskilled work and most areas of skilled work. (Tr. 253-57). It was Dr. Smith's opinion that Plaintiff's impairments would cause him to miss more than four workdays a month. (Tr. 257).

### III.    Applicable Law

The Court's role on review is to determine whether the Commissioner's findings are supported by substantial evidence in the record as a whole. *Ramirez v. Barnhart*, 292 F.3d 576, 583 (8th Cir. 2003). "Substantial evidence is less than a preponderance, but enough so that a reasonable mind might accept it as adequate to support a conclusion." *Estes v. Barnhart*, 275 F.3d 722, 724 (8th Cir. 2002) (quoting *Johnson v. Apfel*, 240 F.3d 1145, 1147 (8th Cir. 2001)). In determining whether evidence is substantial, the Court considers both evidence that detracts from the Commissioner's decision as well as evidence that supports it. *Craig v. Apfel*, 212 F.3d 433, 435-36 (8th Cir. 2000) (citing *Prosch v. Apfel*, 201 F.3d 1010, 1012 (8th Cir. 2000)). If, after conducting this review, "it is possible to draw two inconsistent positions from the evidence and one of those positions represents the [Secretary's] findings," then the decision must be affirmed. *Cox v. Astrue*, 495 F.3d 614, 617 (8th Cir. 2007) (quoting *Siemers v. Shalala*, 47 F.3d 299, 301 (8th Cir. 1995)).

To be eligible for disability insurance benefits, a claimant has the burden of establishing that he is unable to engage in any substantial gainful activity due to a medically determinable physical or mental impairment that has lasted, or can be expected to last, for no less than twelve months. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001); 42 U.S.C. § 423(d)(1)(A). The Commissioner applies a five-step sequential evaluation process to all disability claims: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment that significantly limits his physical or mental ability to perform basic work activities;

(3) whether the claimant has an impairment that meets or equals a disabling impairment listed in the regulations; (4) whether the claimant has the RFC to perform his past relevant work; and (5) if the claimant cannot perform his past work, the burden of production then shifts to the Commissioner to prove that there are other jobs in the national economy that the claimant can perform given his age, education, and work experience. *Pearsall*, 274 F.3d at 1217; 20 C.F.R. § 404.1520(a), 416.920(a). If a claimant fails to meet the criteria at any step in the evaluation, the process ends and the claimant is deemed not disabled. *Eichelberger v. Barnhart*, 390 F.3d 584, 590-91 (8th Cir. 2004).

## IV. Discussion

The ALJ made the following findings: (1) Plaintiff has not engaged in substantial gainful activity since July 27, 2004; (2) Plaintiff has the following severe impairments: organic brain syndrome, significant for learning and memory problems, methemoglobinemia, and a left knee condition; (3) Plaintiff does not have an impairment or combination of impairments that meets or medically equals a listed impairment in 20 C.F.R. Pt. 404, Subpt. P, App. 1; (4) Plaintiff has the RFC to perform light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b), with additional limitations;[6] (5) Plaintiff is unable to perform any past relevant work; (6) considering Plaintiff's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national

---

[6] Plaintiff can do no more than occasional climbing of ladders or scaffolds or crawling, no more than frequent climbing of stairs and ramps, or balancing, stooping, kneeling or crouching. Mentally, Plaintiff can only perform work not precluded by his having moderate limitations in the ability to understand, remember and carry out complex instructions, respond appropriately to usual work situations and routine work changes and interact appropriately with supervisors and co-workers- with moderately limited meaning there is more than slight limitation but the person can still perform in a satisfactory manner. (Tr. 47-48).

economy that Plaintiff can perform;[7] and thus, (7) he has not been under a disability, as defined in the Act, at any point from July 27, 2004, through August 20, 2008.  (Tr. 46-51).

Plaintiff contends that the ALJ erred by: (1) improperly determining his RFC; (2) discrediting his subjective complaints; and (3) failing to fully and fairly develop the record.  *See* Pl.'s Br. 8-18.

### A.  RFC Determination

At the fourth step of the evaluation, a disability claimant has the burden of establishing his RFC.  *Eichelberger*, 390 F.3d at 591; *Masterson v. Barnhart*, 363 F.3d 731, 737 (8th Cir. 2004).  A claimant's RFC is the most he can do despite his limitations.  20 C.F.R. § 404.1545(a)(1).  The ALJ determines a claimant's RFC based on "all relevant evidence, including medical records, observations of treating physicians and others, and the claimant's own descriptions of his or her limitations."  *Masterson*, 363 F.3d at 737.  The Eighth Circuit has stated that "a claimant's residual functional capacity is a medical question."  *Lauer v. Apfel*, 245 F.3d 700, 704 (8th Cir. 2001).  Thus, although the ALJ bears the primary responsibility for determining a claimant's RFC, there must be some medical evidence to support the ALJ's determination.  *Eichelberger*, 390 F.3d at 591; *Dykes v. Apfel*, 223 F.3d 865, 867 (8th Cir 2000).

Plaintiff asserts that the ALJ improperly dismissed Dr. Boyer and Dr. Smith's opinions.  *See* Pl.'s Br. 8-12.  A treating physician's opinion is given controlling weight if it "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence" in a clamant's record.  *Tilley v. Astrue*, 580 F.3d 675, 679 (8th Cir.

---

[7] A vocational expert indicated that, given these factors, Plaintiff would be able to perform the requirements of representative occupations such as light unskilled production worker, sewing machine operator and poultry cutter, of which there are 6,300, 2,500, and 5,000 such jobs in the state economy and 300,000, 280,000, and 44,000 such jobs in the national economy, respectively.  (Tr. 50-51).

2009); 20 C.F.R. § 404.1527(d)(2). The record must be evaluated as a whole to determine whether the treating physician's opinion should be controlling. *Reed v. Barnhart*, 399 F.3d 917, 920 (8th Cir. 2005). A treating physician's evaluation may be disregarded where other medical assessments "are supported by better or more thorough medical evidence, or where a treating physician renders inconsistent opinions that undermine the credibility of such opinions." *Id.* at 920-21 (quoting *Prosch*, 201 F.3d at 1013). In any case, an ALJ must always "give good reasons" for the weight afforded to the treating physician's opinion. 20 C.F.R. § 404.1527(d)(2).

The ALJ gave specific reasons for the weight given to Dr. Smith's opinion. First, Dr. Smith evaluated Plaintiff only on one occasion. The assessment of a doctor who evaluates a claimant once or not at all does not usually constitute substantial evidence. *Jenkins v. Apfel*, 196 F.3d 922, 925 (8th Cir. 1999). Furthermore, the ALJ correctly pointed out that Dr. Smith's assessment was primarily based on Plaintiff's subjective statements rather than objective medical evidence. *Kirby v. Astrue*, 500 F.3d 705, 709 (8th Cir. 2007) (citing *Vandenboom v. Barnhart*, 421 F.3d 745, 749 (8th Cir. 2002)). Although Plaintiff undoubtedly suffers from some learning and memory impairments, the medical evidence of record does not support Dr. Smith's overly restrictive RFC assessment and GAF score of only 30-35, especially when Plaintiff has fully average IQ scores and Dr. Smith diagnosed organic brain dysfunction of "moderate" severity. (Tr. 252). Dr. Boyer, who evaluated Plaintiff on two separate occasions, gave him an estimated GAF of 65, indicating mild symptoms. (Tr. 188-89, 264). Similarly, Dr. Nichols found that Plaintiff's impairments have a minimal impact on his ability to execute activities of daily living. (Tr. 226). Dr. Smith's findings were internally inconsistent and at odds with the medical evidence as a whole. The ALJ properly took these considerations into account when determining how much weight to give Dr. Smith's opinion. As such, we find no error.

Plaintiff next argues that the ALJ's mental RFC determination is contrary to the findings of Dr. Boyer. We find no such contradictions. After administering various tests, Dr. Boyer found that Plaintiff had average to above average intellectual capabilities, which were impaired by academic deficits, particularly in the area of verbal expression. (Tr. 189). However, it should be noted that Dr. Boyer's estimated GAF score of 65 indicates only mild symptoms. Furthermore, Dr. Boyer indicated that Plaintiff needed extensive vocational and personal training to function independently in a work environment, training which was successfully completed in April 2004. (Tr. 189, 359). With the exception of Dr. Smith, no treating or consultative physician found more than moderate limitations in Plaintiff's mental abilities. The ALJ properly evaluated the medical evidence relating to Plaintiff's mental impairments and substantial evidence supports his conclusions.

The court also dismisses Plaintiff's claim of unfair bias or prejudice exhibited by the ALJ toward Dr. Smith. The ALJ gave meaningful explanations for the weight given to Dr. Smith's opinion. (Tr. 49). Moreover, Plaintiff has offered no specific evidence of bias. *See Kittler v. Astrue*, 231 Fed. Appx. 524, 525 (8th Cir. 2007) (citing *Rollins v. Massanari*, 261 F.3d 853, 857-58 (8th Cir. 2001) (plaintiff did not overcome presumption that ALJ was unbiased)). Accordingly, we reject his conclusory allegation of prejudice.

As a supplemental matter, we find that substantial evidence supports the ALJ's determination as to Plaintiff's physical/exertional impairments. The medical evidence of record supports the ALJ's determination that Plaintiff's methemoglobinemia is adequately controlled with medication and only requires occasional treatment. *Brown v. Barnhart*, 390 F.3d 535, 540 (8th Cir. 2004) ("If an impairment can be controlled by treatment or medication, it cannot be considered disabling."). Additionally, Plaintiff's medical records, lack of pain medication and treatment, and daily activities

suggest that his left knee impairment is not of disabling severity. *Davis v. Barnhart*, 197 Fed. Appx. 521, 522 (8th Cir. 2006). For these reasons, we affirm the ALJ's RFC determination.

### B. Credibility Determination

Plaintiff contends that the ALJ chose to focus solely on inconsistencies in his testimony while ignoring his credible statements. *See* Pl.'s Br. 14-17. We disagree. When evaluating a claimant's subjective allegations, the ALJ must consider all evidence relating to: (1) the claimant's daily activities; (2) the duration, frequency and intensity of the pain; (3) any precipitating and aggravating factors; (4) the dosage, effectiveness and side effects of medication; and (5) any functional restrictions. *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984). The ALJ is "may not discount a claimant's allegations of disabling pain solely because the objective medical evidence does not fully support them." *Medhaug v. Astrue*, 578 F.3d 805, 816 (8th Cir. 2009) (quoting Goff *v. Barnhart*, 421 F.3d 785, 792 (8th Cir. 2005)). However, subjective complaints may be discounted if there are inconsistencies in the medical evidence as a whole. *Id.*

Contrary to Plaintiff's assertion, the ALJ properly cited the *Polaski* factors and made express findings regarding Plaintiff's daily activities and treatment record. (Tr. 48-49). "Where adequately explained and supported, credibility findings are for the ALJ to make." *Lowe v. Apfel*, 226 F.3d 969 (8th Cir. 2000). The ALJ referred to Plaintiff's work history in discounting his subjective complaints. (Tr. 49-50). *See Comstock v. Chater*, 91 F.3d 1143, 1147 (8th Cir. 1996) (claimant's work activity inconsistent with allegations of disabling pain). Furthermore, Plaintiff's daily activities, including his ability to perform household chores, mow three acres of land, chat on the internet, and read novels are inconsistent with both his alleged physical and mental impairments. (Tr. 124-28, 169, 174). A court "will not disturb the decision of an ALJ who considers, but for good

cause expressly discredits, a claimant's complaints of disabling pain." *Gonzales v. Barnhart*, 465 F.3d 890, 895 (8th Cir. 2006) (quoting *Goff*, 421 F.3d at 792). Here, the ALJ stated the proper standard, considered the factors in conjunction with Plaintiff's testimony, and cited valid reasons for discounting Plaintiff's subjective complaints. Accordingly, we find no error.

### C. Duty to Fully and Fairly Develop the Record

In his final argument, Plaintiff contends the ALJ failed to fully and fairly develop the record concerning his mental impairments. *See* Pl.'s Br. 9, 13-14. We disagree.

The ALJ has a duty to fully and fairly develop the record, even if a claimant is represented by counsel. *Wilcutts v. Apfel*, 143 F.3d 1134, 1137 (8th Cir. 1998). "It is well-settled that the ALJ's duty to fully and fairly develop the record includes the responsibility of ensuring that the record includes evidence addressing the alleged impairments at issue from either a treating or examining physician. *Nevland v. Apfel,* 204 F.3d 853, 858 (8th Cir.2000). While the Secretary is under no duty to go to inordinate lengths to develop a claimant's case, he must "make an investigation that is not wholly inadequate under the circumstances." *Battles v. Shalala*, 36 F.3d 43, 45 (8th Cir. 1994) (quoting *Miranda v. Secretary of Health, Educ. & Welfare*, 514 F.2d 996, 998 (1st Cir. 1975)). There is no bright-line test for determining when the Secretary has failed to adequately develop the record; the determination must be made on a case by case basis. *Battles*, 36 F.3d at 45 (quoting *Lashley v. Secretary of Health & Human Serv.,* 708 F.2d 1048, 1052 (6th Cir.1983)).

Plaintiff argues that the ALJ was obligated to re-contact Dr. Smith for further clarification before dismissing his opinion. *See* Pl.'s Br. 13-14. He cites *O'Donnell v. Barnhart*, 318 F.3d 811 (8th Cir. 2003), in support of this proposition. In *O'Donnell*, the treating physician had a five-year relationship with the patient that included over fifty office visits. *Id.* The Eighth Circuit determined

that, given the "extensive treatment history" in the case, the ALJ was obligated to re-contact the treating physician. *Id.* at 819. Here, Dr. Smith was a one-time consultative examiner, not a treating physician. Furthermore, Dr. Smith's opinion was a significant departure from the opinions of Drs. Boyer and Nichols. In this instance, there was substantial evidence in the record to allow the ALJ to make a fully informed decision. *Haley v. Massanari*, 258 F.3d 742, 749-50 (8th Cir. 2001). As such, the ALJ's decision is affirmed.

### V. Conclusion

Having carefully reviewed the record, the undersigned finds that substantial evidence supports the ALJ's determinations at each step of the disability evaluation process, and thus the decision should be affirmed. Accordingly, Plaintiff's complaint should be dismissed with prejudice.

ENTERED this 12th day of July 2010.

*/s/ J. Marschewski*
HON. JAMES R. MARSCHEWSKI
CHIEF U.S. MAGISTRATE JUDGE